IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANOTNIO TRACA, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 23-1363 |
| | : | |
| v. | : | |
| | : | |
| BETHLEHEM AREA SCHOOL DISTRICT and Dr. JOSEPH J. ROY, | : | |
| | : | |
| Defendants. | : | |

# ORDER

**AND NOW**, this 15th day of August, 2023, after considering: (1) the complaint; (2) the defendants' motion to dismiss the complaint (Doc. No. 14); (3) the plaintiff's response in opposition to the motion to dismiss (Doc. No. 15);[1] and (4) the arguments from counsel during the July 5, 2023 oral argument, accordingly, it is hereby **ORDERED** as follows:

1. By agreement of the parties, the state created danger claim in the complaint is **DISMISSED WITH PREJUDICE**;

2. The motion to dismiss the amended complaint (Doc. No. 14) is **GRANTED IN PART** and **DENIED IN PART** as follows:[1]

   a. The motion to dismiss, to the extent the defendants seek to have the court dismiss the plaintiff's claims under 42 U.S.C. § 1983 is **GRANTED**, and the claims are **DISMISSED WITHOUT PREJUDICE**;

   b. The defendants' motion to strike is **DENIED** as **MOOT**;

---

[1] The plaintiff's response in opposition to the defendants' motion to dismiss appears to be improperly titled "Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's Complaint." *See* Doc. No. 15 at ECF p. 1. The court will refer to this document as "Pl.'s Mem."

3. The plaintiff shall have until **August 30, 2023**, to file an amended complaint. Should the plaintiff fail to file an amended complaint, the court will decline to exercise supplemental jurisdiction over the plaintiff's remaining claims and these claims will be dismissed without prejudice to the plaintiff seeking relief in the appropriate state court.

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

---

[1] On October 14, 2022, the plaintiff was assigned to supervise a group of students at a high school football game. Compl. at ¶ 23, Doc. No. 1. At the time, the plaintiff was a high school assistant principal, employed by the Bethlehem Area School District ("the School District"), a defendant in this case. *See id.* at ¶ 4–7. The second defendant, Dr. Joseph J. Roy ("Dr. Roy"), was the District Superintendent of the School District. *Id.* at ¶ 8–9. At the football game, a fight broke out in a student section and the plaintiff alleges that he "moved immediately. . . to disperse the crowd of students." *Id.* at ¶ 23–25. Then, the plaintiff states that Dr. Roy suddenly and without warning punched the plaintiff in the chest. *Id.* at ¶ 26. The plaintiff asked "why did you hit me," to which Dr. Roy responded "'[you are] not doing your fucking job' and instead 'just watching the game.'" *Id.* at ¶ 27. The plaintiff walked away and reported the incident to the School District. *Id.* at ¶ 30.

On April 10, 2023, the plaintiff filed the instant complaint against Dr. Roy and the School District (collectively "the defendants"). *See* Doc. No. 1. In the complaint, the plaintiff alleges eight causes of action: (1) a 42 U.S.C. section 1983 claim for violations of the plaintiff's rights under the Fourth and Fourteenth Amendments against Dr. Roy; (2) a 42 U.S.C. section 1983 claim for *Monell* liability against the School District; (3) a 42 U.S.C. section 1983 claim for state created danger against the School District; and counts (4)–(8) allege various state tort claims against Dr. Roy. *See id.* at 11–19. On June 20, 2023, the defendants filed a motion to dismiss the complaint, arguing that the plaintiff has failed to state a claim under 42 U.S.C. section 1983 and the court should not exercise jurisdiction over the state tort claims. *See* Defs.' Mem. of Law in Supp. of their Mot. to Dismiss Pl.'s Compl. ("Defs.' Mem.") at 3, Doc. No. 14-1. On July 5, 2023, the plaintiff filed a response in opposition to the defendants' motion to dismiss. *See* Doc. No. 15. The court held an initial pretrial conference and oral argument on the motion to dismiss that same day. *See* Doc. No. 13.

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint or a portion of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests "the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). As the moving party, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

In general, a complaint is legally sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The touchstone of [this] pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Although Rule 8(a)(2) does "not require heightened fact pleading of specifics," it does require the recitation of "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In other words, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotation omitted). "In ruling on a 12(b)(6) motion, courts can and should reject legal conclusions, unsupported conclusions, unwarranted references, unwarranted deductions, footless conclusions of law, and sweeping legal conclusions in the form of actual allegations." *Bright v. Westmoreland Cnty.*, 380 F.3d 729, 735 (3d Cir. 2004) (citation

and internal quotation marks omitted). Ultimately, a complaint must contain facts sufficient to nudge any claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Here, the defendants first argue that the complaint does not sufficiently plead the deprivation of a constitutional right and therefore, all of the plaintiff's claims under 42 U.S.C. section 1983 must be dismissed. *See* Defs.' Mem. at 7–9. Second, if the court grants their motion to dismiss with respect to the federal claims, the defendants request that the court decline to exercise supplemental jurisdiction and dismiss the remaining state law claims pursuant to Federal Rule of Civil Procedure 12(b)(1). *See id.* at 3–4, 22. The court agrees with the defendants' arguments on both points.

The court begins by dismissing the state created danger claim, count III of the complaint. The parties agreed at oral argument to dismiss this claim. Next, the court moves to the alleged violations of the plaintiff's rights under the Fourth and Fourteenth Amendment. The plaintiff claims that the altercation—specifically the punch—deprived "him of his constitutionally protected right to be free from bodily restraint and punishment under the Fourth . . . and Fourteenth Amendments to the United Stated Constitution, in that Plaintiff was subjected to seizure of his person." *See* Compl. at ¶ 52.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has held that the Fourteenth Amendment extends this constitutional protection to searches and seizures by state officers, *see Elkins v. United States*, 364 U.S. 206, 213 (1960), including public school officials. *New Jersey v. T.L.O.*, 469 U.S. 325, 334 (1985). To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment the plaintiff must show that the defendant's actions: (1) constituted a seizure; and (2) were unreasonable in light of the circumstances. *Estate of Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003); *see also El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020) (discussing standard for Fourth Amendment claims). In *Torres v. Madrid*, 141 S. Ct. 989 (2021), the Supreme Court held that "[t]he application of physical force to the body of a person *with intent to restrain* is a seizure, even if the force does not succeed in subduing the person." 141 S. Ct. at 994 (emphasis added). "As applied to a person, '[t]he word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful.'" *Id.* at 995 (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)) (alteration in original).

Here, the plaintiff argues that Dr. Roy applied physical force to the plaintiff but does not allege that Dr. Roy did so with an intent to restrain. *See* Compl. at ¶¶ 26–27; Pl.'s Mem. at 13, Doc. No. 15. Under *Torres*, this claim fails. *See* 141 S. Ct. at 994; *see also Gross v. Cairo*, No. 21-2188, 2022 WL 4279707, at *2 (M.D. Pa. Sept. 15, 2022) ("A person is seized 'when the officer by means of physical force or show of authority, terminates or restrains his freedom of movement . . . through means intentionally applied.'") (quoting *Brendlin v. California*, 551 U.S. 249, 254 (2007)). The plaintiff argues that any physical touch can be sufficient for a court to find a seizure. Pl.'s Mem. at 13. Although that contention may be true, the plaintiff's argument omits the requirement of an "intent to restrain." *See Torres*, 141 S. Ct. at 994 ("[F]orce intentionally applied for some other purpose [will not] satisfy this rule."). The cases cited by the plaintiff all include the application of force with an intent to restrain. *See* Pl.'s Mem. at 13–14. Since *Torres*, courts throughout the country have held that a public official's application of force on another is not a seizure *per se*. *See, e.g.*, *United States v. Scott*, No. 21-51084, 2022 WL 17261790, at *2 (5th Cir. Nov. 29, 2022) (holding officer physically moving individual out of way was not seizure because no intent to restrain with application of force); *Pinto v. Collier Cnty.*, No. 21-13064, 2022 WL 2289171, at *4 n.7, *6 (11th Cir. June 24, 2022) (explaining state actor separating two people to stop physical altercation does not constitute seizure). The plaintiff fails to sufficiently allege facts to show that Dr. Roy used the force with the intent to restrain the plaintiff. *See* Compl. at ¶¶ 19–32. Rather, the plaintiff alleges, at best, that Dr. Roy redirected the plaintiff to do some other action, specifically break up an ongoing fight between students. *See id.* at ¶¶ 23–27. To constitute a seizure, force must be applied with an intent to restrain, as opposed to force applied for some other purpose. *See Torres*, 141 S. Ct. at 998 ("Nor will force intentionally applied for some other purpose satisfy this rule."). The plaintiff alleges that Dr. Roy used force not to restrain the plaintiff but "for some other purpose." Thus, the plaintiff has not alleged facts sufficient to show a seizure. *See id.* Accordingly, the court will dismiss count I as it pertains to a violation of the plaintiff's Fourth Amendment rights.

Next, the plaintiff argues that Dr. Roy punching him violated his substantial due process rights under the Fourteenth Amendment. *See* Compl. at ¶ 52. For such claims under the Fourteenth Amendment, the Third Circuit has adopted the "shocks the conscience standard to federal claims alleging the use of excessive force by public school officials." *Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 172 (3rd Cir. 2001). "[T]he substantive component of the due process clause is violated by [state conduct] when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *See id.* (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847) (alterations in original). When the force is applied with an intent "to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.*

> In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Gottlieb*, 272 F.3d at 172–73 (quoting *Metzger v. Osbeck*, 841 F.2d 518, 520 (3d Cir. 1988)). These factors are traditionally used to evaluate school officials using corporal punishment on children under their supervision, however, the factors are still relevant in evaluating the facts presently before the court. *See Kurilla v. Callahan*, 68 F. Supp. 2d 556, 561 (M.D. Pa. 1999). The court will start with the purpose-of-the-force factor. *See Gottlieb*, 272 F.3d at 172–73. The plaintiff alleges that Dr. Roy punched him in the chest in an—albeit inappropriate and overzealous—attempt to get the plaintiff to do his job and stop students from fighting. *See* Compl. at ¶ 27. Preventing students from harming one another is an appropriate purpose, even if Dr. Roy's actions were inappropriate. There is no evidence of maliciousness nor sadism in the factual allegations. *Cf. Gottlieb*, 272 F.3d at 173 (offending conduct in corporal punishment in public school cases must be inspired by malice or sadism to state claim). Next, the court looks at the plaintiff's injuries. The complaint lacks specificity related to any physical injury suffered by the plaintiff as a result of the punch. *See Id.* at ¶ 48 ("Plaintiff has suffered physical injury, pain and suffering, and continues to suffer severe emotional, psychological and physical distress."). From the complaint, briefings on the motion to dismiss and argument presented at oral argument, it does not appear the plaintiff suffered serious physical injury from the altercation. These factors weigh in favor of the defendants.

One factor weighing in favor of the plaintiff's claim is that the punch does not seem necessary to accomplishing or furthering the goals of stopping violence occurring at a school event. If Dr. Roy was trying to stop the on-going fight, the act of punching another school official in the chest does not further that goal. Dr. Roy's conduct would appear counterproductive.

Balancing these factors, the court properly must find that Dr. Roy's actions did not shock the court's conscience, in a constitutional sense. *See Gottlieb*, 272 F.3d at 172–73; *Miller v. City of Philadelphia*, 174 F.3d 368, 375 (3rd Cir. 1999) (shocking of conscious test is fact-intensive, case-specific inquiry). Although Dr. Roy's actions may create the foundation for a tort action—the validity of which the court does not address in the instant order—"the Fourteenth Amendment is not a 'font of tort law to be superimposed upon whatever systems may already be administered by the States.'" *See Lewis*, 523 U.S. at 848 (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)). The plaintiff's allegations do not create the foundation of a claim under the Fourteenth Amendment. *See id.* Accordingly, the court will dismiss the plaintiff's Fourteenth Amendment due process claim and thus, the remainder of count I.

Next, the court addresses the plaintiff's *Monell* claim. Under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), a plaintiff may only hold a municipality liable for a constitutional deprivation under 42 U.S.C. section 1983 where the alleged deprivation arises from a policy or custom that amounts to deliberate indifference to constitutional rights. As discussed above, the court finds that the plaintiff has failed to plead facts sufficient to find a violation of the plaintiff's constitutional rights. Moreover, the plaintiff fails to allege that the implementation of a municipal policy or custom caused the constitutional violation. *See Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991). The plaintiff argues that because Dr. Roy was a final policy making authority, that means that the punch could constitute an official policy. Pl.'s Mem. at 23–24. But, "[i]n order to ascertain who is a policy maker a court must determine which official had final, unreviewable discretion to make a decision or take action." *Kneipper v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996). By the plaintiff's own admission, he went to the School District to review Dr. Roy's actions and "take appropriate remedial actions. *See* Compl. at ¶ 30. In punching the plaintiff, Dr. Roy was not acting in his capacity as a policy maker, but an employee of the School District. Breaking up a fight did not invoke Dr. Roy's policy making authority. Thus, these allegations cannot provide the basis for a *Monell* liability claim.

The dismissal of the federal claims leaves only the plaintiff's state tort claims, and diversity of citizenship is not present. A "district court may decline to exercise supplemental jurisdiction [over a state law claim] if . . . the district court dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The court declines to exercise jurisdiction over the plaintiff's remaining state law claims in the complaint and will dismiss them without prejudice to the plaintiff seeking relief in the appropriate state court.

Finally, the court is cognizant that "if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted). Here, although the court is hard-pressed to see how the clearly stated factual allegations in the complaint could be replead to establish a violation of constitutional dimension, the court will nevertheless provide the plaintiff an opportunity to file an amended complaint if he so wishes.